**Charlene DOMINGUEZ, Appellant,**

v.

**Jose D. CASTANEDA, Appellee.**

**No. 08–04–00051–CV.**

Court of Appeals of Texas, El Paso.

May 5, 2005.

Rehearing Overruled June 1, 2005.

Justo Fernandez–Gonzalez, El Paso, for appellant.

Fred J. Morton, El Paso, for appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal filed by Appellant, Charlene Dominguez, complaining of the trial court's entry of judgment against her and in favor of Appellee below. Appellant had filed her Original Petition for Injunctive Relief, Declaratory Relief and Damages seeking to prevent foreclosure of a lien on property she claimed as her homestead. The trial court entered a Temporary Restraining Order stopping the foreclosure sale. Appellee filed an Original Answer and claim for set-off asserting a claim under the note. After a trial to the court, judgment was entered in favor of Appellee. Findings of Fact and Conclusions of Law were filed. Appellant did not file Requested Findings of Fact or Conclusions of Law and did not object to the Findings as filed. Appellant timely filed a Notice of Appeal. For the reasons stated, we affirm.

## I. SUMMARY OF THE EVIDENCE

The underlying factual dispute arises out of a financial transaction that originated with a loan, now disputed, between the parties. Appellant, due to her impending incarceration in a federal penitentiary, signed a general power of attorney in favor of her husband, Reydesel Dominguez, allowing him to handle Appellant's business and personal affairs. This power of attorney included the authority to operate and make all decisions related to her personal and business affairs as well as specific authority to act regarding the management of the business owned by Appellant known as The Tap Bar and Restaurant located in El Paso, Texas. Appellant was incarcerated sometime in mid-November 1996. Shortly thereafter, on or about November 20, 1996, Jose Castaneda, entered into a loan transaction where he loaned $25,000 to Mr. Dominguez for a period of 30 days. Mr. Castaneda prepared a Deed of Trust as security for the $25,000 loan encumbering property located at 4921 Garry Owen, a home owned and occupied by Charlene Dominguez's father, Charles Soule. Mr. Castaneda testified that Mr. Dominguez represented that he and Appellant owned the home and resided in another house located next door to the Garry Owen property at 1603 St. John. The original agreement provided that the loan would be repaid in 30 days, by December 20, 1996. In the event that the loan was not repaid, Appellee would file the Deed of Trust establishing a lien on the property in question. We note that the entire agreement between the parties appears to be contained within the terms of the Deed of Trust and no Promissory Note or other written document reflecting the terms or conditions of the debt is included in the record. We also note that the Deed of Trust contains standard clauses regarding representations of the borrower's ownership interest. The debt was not paid on December 20, 1996 and Appellee filed the Deed of Trust in the County Clerk's office on December 31, 1996.

In January of 1997, Appellant's father, the owner of the Garry Owen property, died and left the Garry Owen property to Appellant and Appellant's brother pursuant to Mr. Soule's will. Appellant acquired full title to the property on November 19, 1997. After her release from prison in late 1997, Appellant and her husband moved into the Garry Owen property. After her release from prison, Appellant and Reydesel Dominguez went to see Mr. Castaneda at his office and discussed the loan agreement. Appellee

testified that Appellant acknowledged the obligation and reflected a desire to pay the note. The record contains two receipts, dated June 22, 1998 and September 28, 1998 reflecting payments made on the note. The receipts reflect Reydesel Dominguez as the payor of the two partial payments.

In November of 2000, Appellant filed bankruptcy in federal court under Chapter 13, of the Federal Bankruptcy Code. Appellant included the $25,000 obligation owed to Appellee as a scheduled debt in her Chapter 13 filing. Appellant testified that she filed the schedule which included the $25,000 obligation but checked the "disputed" box with regard to this debt. At trial, she also testified that she did not intend to pay the debt but had been instructed to list all her debts in the schedule. Appellant did not make any payments under the plan and the bankruptcy was eventually dismissed.

On cross-examination, Appellee's attorney inquired of Appellant about the validity of the $25,000 obligation and Appellant testified that she did not owe Appellee any of the money. Appellee's attorney used Appellant's deposition for impeachment purposes and presented Appellant's prior deposition testimony as evidence of her acknowledgment of the debt. During her deposition testimony, taken on June 11, 2003, Appellee's attorney asked Appellant about the $25,000 debt. Her deposition testimony reflected that Appellant stated she did not "deny it" (the debt) and that she had "tried to pay him, but I'm unable to pay him." The deposition continued with Appellant's response to a question regarding the validity of the lien, explaining her position in the lawsuit by stating, "And I didn't do that, and I can't pay the loan. I haven't denied that it was there or what they did or what they tried to do, but I can't pay him. That's what it boils down

to. And I'm not going to sell the only thing I have because of that because that's the only thing I have."

Sometime in early 2002, Appellee received a notice that a tax suit had been filed against the Garry Owen property. Appellee retained an attorney who sent demand letters to Appellant requesting payment of the indebtedness and threatening foreclosure of the lien. Two letters and notices of foreclosure were sent, the first dated April 11, 2002 and the second July 23, 2002. The second notice listed a foreclosure date of September 3, 2002. Appellant filed this lawsuit on August 29, 2002 and obtained a Temporary Restraining Order halting the sale on August 30, 2002.

A trial to the court was held on January 9, 2004. Appellant called herself and her attorney as her only witnesses. Appellee presented himself and his former attorney during his case-in-chief. The trial court entered judgment in favor of Appellee on January 30, 2004.

## II. *ISSUES ON APPEAL*

Appellant presents six issues on appeal. Issue No. One challenges the trial court's Finding of Fact and Conclusion of Law with regard to the issue of whether the four-year statute of limitations is a bar to the claim asserted by Appellee. We read this as a challenge to the legal and factual sufficiency of the evidence to support the non-finding and conclusion that the statute of limitations was a bar to Appellee's claims, as a matter of law. We note that Appellant does not specify the findings or conclusions challenged, but we read Issue No. One as a complaint about Finding of Fact "F" and Conclusion of Law "A."

The trial court filed Findings of Fact and Conclusions of Law on January 30, 2004 and made the following findings relevant to this issue:

Finding of Fact "F" states:

CHARLENE DOMINGUEZ made only two payments to reduce the $25,000.00 debt ($1,250.00 on June 22, 1998 and $1,875.00 on September 28, 1998), but continuously promised to pay same. These promises were formalized when she filed Chapter 13 Bankruptcy proceedings on November 6, 2000, in which she submitted a written Chapter 13 Plan to pay all her creditors, including CASTANEDA, whose $25,000.00 debt was listed in her sworn schedule of assets she promised to pay. When she failed to make any payments under the plan, the bankruptcy court dismissed the proceedings on April 24, 2001.

Conclusion of Law "A" stated:

Defendant is not barred by the Statute of Limitations which requires foreclosures to be instituted within four years after maturity, Section 16.035, Texas Civil and Practice Remedies Code, because a claim that has been barred by the Statute of Limitations may be, and was here, revived by the debtor's subsequent acknowledgement of its justness, which occurred here when Plaintiff included Defendant's $25,000.00 loan in her Chapter 13 proceedings and promised to pay same, as recognized in Sections 16.065 of the Texas Civil Practice and Remedies Code.

Issue No. Two raises the question of Appellant's claim that the property subject to the lien became her homestead, and therefore is exempt from foreclosure. Issue No. Two is also presented as a general statement without a specific reference to the Findings of Fact or Conclusions of Law being challenged. We read this as an argument that there is no or insufficient evidence to support the Court's Findings and Conclusions as follows, as a matter of law. Again noting that Appellant had the burden of proof on the issue and the ap-

propriate review by this Court is whether there is any evidence contrary to the non-finding by the trial court and whether the judgment is against the "great weight and preponderance of the evidence."

Finding of Fact "B" stated:

On November 20, 1996, Defendant Jose D. Castaneda loaned $25,000.00 in case to Plaintiff CHARLENE DOMINGUEZ through her attorney in fact REYDE-SEL DOMINGUEZ and took as collateral a Deed of Trust lien on property at 4921 Gary Owen, El Paso, Texas, which CASTANEDA was advised was owned by CHARLENE DOMINGUEZ although not her homestead, as she and her husband resided in the house next door at 1603 St. John, El Paso, Texas.

Conclusion of Law "D" stated:

Defendant is entitled to foreclose the lien granted to him by Plaintiff through her attorney in fact prior to the time she could make any homestead claim with respect thereto, and the fact that she was not the record title owner at the time Defendant's lien was created is cured by the doctrine of after acquired title, which estops her from now denying ownership or the validity of Defendant's lien.

As Appellant had the burden of proof to establish the claim that the property in question was protected as her homestead, we read Appellant's challenge as a challenge to the "non-finding" of the homestead exemption as a defense to Appellee's claim, as a matter of law.

Appellant's Issue Nos. Three through Six present questions regarding whether Appellee's conduct in connection with his letters sent in 2002 and his attempted foreclosure of the property violated various statutes dealing with the collection of debts. Again, the questions appear to

complain of "non-findings" by the trial court.

## III. *STANDARD OF REVIEW*

In a bench trial, factual and legal sufficiency challenges to the trial court's findings of fact are reviewable under the same standards that are applied in reviewing evidence supporting a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). We review a trial court's conclusions of law *de novo*. *Austin Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320, 322 (Tex.App.-El Paso 1995, writ denied).

A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. There are two separate "no evidence" claims. When the party having the burden of proof suffers an unfavorable finding,[1] the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law." When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *In re Estate of Livingston*, 999 S.W.2d 874, 879 (Tex.App.-El Paso 1999, no pet.); *see Creative Manufacturing, Inc. v. Unik, Inc.*, 726 S.W.2d 207, 210 (Tex.App.-Fort Worth 1987, writ ref'd n.r.e.).

When attacking the legal sufficiency of the evidence to support an adverse finding on an issue for which he had the burden of proof, i.e., challenging the trial court's finding as a matter of law, the appellant must demonstrate on appeal that the evidence conclusively established all the vital facts in support of the issue. *In re Estate of Livingston*, 999 S.W.2d at 879; *Sterner v. Marathon Oil Company*, 767 S.W.2d 686, 690 (Tex.1989); *Kratz v. Exxon Corp.*, 890 S.W.2d 899, 902 (Tex.App.-El Paso 1994, no writ); *Chandler v. Chandler*, 842 S.W.2d 829, 832 (Tex.App.-El Paso 1992, writ denied). A party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles. *In re Estate of Livingston*, 999 S.W.2d at 879; *Sterner*, 767 S.W.2d at 690. First, the record must be examined for evidence that supports the finding, while ignoring all evidence to the contrary. *In re Estate of Livingston*, 999 S.W.2d at 879; *Sterner*, 767 S.W.2d at 690; *Kratz*, 890 S.W.2d at 902. Second, if there is no evidence to support the finding, then the entire record must be examined to see if the contrary proposition is established as a matter of law. *In re Estate of Livingston*, 999 S.W.2d at 879; *Sterner*, 767 S.W.2d at 690; *Kratz*, 890 S.W.2d at 902. Only if the contrary position is conclusively established will the point of error be sustained. *In re Estate of Livingston*, 999 S.W.2d at 879–80; *Kratz*, 890 S.W.2d at 902; *Chandler*, 842 S.W.2d at 832.

In reviewing a factual sufficiency point of error, the appeals court must weigh all of the evidence in the record. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). Findings of fact may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* In that event, the appeals court must state clearly why the finding is factually insufficient or so against the great weight and preponderance as to be manifestly unjust. *Id.*

An "insufficiency" point invokes a broader standard, requiring this Court to consider all of the evidence and ascertain whether the evidence supporting the finding is so weak, or the evidence to the contrary so overwhelming, that the finding should be set aside and a new trial or-

---

1. This is sometimes referred to as a "failure to find" or a "non-finding."

dered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

When a party appeals from a nonjury trial, it must complain of specific findings and conclusions of the trial court, because a general complaint against the trial court's judgment does not present a justiciable question. *Fiduciary Mortgage Co. v. City Nat'l Bank*, 762 S.W.2d 196, 204 (Tex.App.-Dallas 1988, writ denied). Accordingly, findings of fact and conclusions of law are mandatory for a party to file to avoid the onerous presumptions that apply in an appeal from a nonjury trial. When an Appellant does not request or file findings and conclusions by the trial court, the appellate court presumes the trial court found all fact questions in support of its judgment, and the reviewing court must affirm that judgment on any legal theory finding support in the pleadings and evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987).

If the Appellant does not challenge the trial court's findings of fact when filed, these facts are binding upon both the party and the appellate court. *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex.Civ. App.-Beaumont 1980, writ ref'd n.r.e.). Accordingly, it is incumbent for the Appellant to attack the findings by appropriate legal and factual sufficiency points of error. *Lovejoy v. Lillie*, 569 S.W.2d 501, 504 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.). In an appeal of a nonjury trial, findings are specifically and meaningfully tied to appropriate standards of appellate review and are therefore truly beneficial to appellate review. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 853 (Tex.1992).

Because Appellant had the burden of proof on the allegations against Appellee, the court's findings were against Appellant on each of these findings. As a result, the proper point of error is that the court's individual findings are against the "great weight and preponderance of the evidence." The "insufficient evidence" point of error is appropriate only when the party without the burden of proof on an issue complains of the court's findings. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960).

We do not, however, hold that this failure to frame the issues in the appropriate manner is fatal to the appeal. Texas Rules of Appellate Procedure provide that "[t]he statement of an issue or point will be treated as covering every subsidiary question that is fairly included." Tex. R.App. P. 38.1(e). As a result, we will consider the "insufficient evidence" portion of the issue as an allegation that the trial court's judgment is "against the great weight and preponderance of the evidence."

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). Findings of fact are the exclusive province of the trier of fact. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex. 1986). A court of appeals cannot make findings of fact; it can only "unfind" facts. *Tex. Nat'l Bank v. Karnes*, 717 S.W.2d 901, 903 (Tex.1986). Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the findings. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986); *Reliance Ins. Co. v. Denton Cent. Appraisal Dist.*, 999 S.W.2d 626, 629 (Tex.App.-Fort Worth 1999, no pet.). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing

evidence supporting a jury's answer. *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex.App.-Fort Worth 2003, no pet.); *Ortiz*, 917 S.W.2d at 772; *Catalina*, 881 S.W.2d at 297.

■ We do not have to give details of supporting evidence when upholding factual sufficiency of the evidence underlying the trial court's judgment. *Zeptner*, 111 S.W.3d at 735; *see Ellis County State Bank v. Keever*, 888 S.W.2d 790, 794 (Tex. 1994).

## IV. *DISCUSSION*

Appellant has presented six issues challenging the trial court's specific findings with regard to the obligations owed by Appellant to Appellee in connection with the $25,000 loan. Appellant's first issue challenges the court's findings regarding the applicability of the four-year statute of limitations and whether Appellant's conduct revives the debt pursuant to Civil Practice and Remedies Code Section 16.065. Because Appellant did not file Requested Findings of Fact or Conclusions of Law and did not object to the Findings and Conclusions as filed, we have limited avenues of review available. The findings and conclusions are binding on us as the reviewing court and we can only overturn the trial court's decision if there is no evidence to support the judgment as a matter of law and the contrary position is conclusively established.

■ We are convinced that the trial court's findings regarding the statute of limitations and the subsequent acknowledgment of the justness of the claim is supported by the limited record presented. We note that the parties agree to the underlying facts establishing the existence of the obligation related to the $25,000. The parties agree that Appellee loaned Appellant, pursuant to a valid power of attorney in favor of Reydesel Dominguez,

$25,000. Mr. Dominguez signed a Deed of Trust evidencing the debt and agreeing to repay the money on December 20, 1996. Appellant now contends that she is not obligated to repay the debt because the statute of limitations is a bar to Appellee's claim and the property is now protected as her homestead and not subject to foreclosure under the lien.

Appellant is correct that Section 16.035(b) of the Texas Civil Practice and Remedies Code establishes the statute of limitations for foreclosing on a lien related to real property is four years. Section 16.035(b) provides, that "A sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM.CODE ANN. § 16.035(b) (Vernon 2002). We also agree that the parties to a real property transaction may suspend the running of the four-year limitations period by filing a written agreement as provided by Section 16.036 of the Texas Civil Practice and Remedies Code.

### § 16.036 Extension of Real Property Lien

(a) The party or parties primarily liable for a debt or obligation secured by a real property lien, as that term is defined in Section 16.035, may suspend the running of the four-year limitations period for real property liens through a written extension agreement as provided by this section.

(b) The limitations period is suspended and the lien remains in effect for four years after the extended maturity date of the debt or obligation if the extension agreement is:

(1) signed and acknowledged as provided by law for a deed conveying real property; and

(2) filed for record in the county clerk's office of the county where the real property is located.

(c) The parties may continue to extend the lien by entering, acknowledging, and recording additional extension agreements.

(d) The maturity date stated in the original instrument or in the date of the recorded renewal and extension is conclusive evidence of the maturity date of the debt or obligation.

(e) The limitations period under this section is not affected by Section 3.118, Business & Commerce Code.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.036 (Vernon 2002).

We note, however, that this section of the Texas Civil Practice and Remedies Code has little applicability to this case because there is no evidence that the parties complied with the specific filing requirements of any section. This section should be reviewed for what should be done to extend a lien but provides no guidance here because no extension agreement was prepared or filed.

We recognize that Section 16.065 of the Texas Civil Practice and Remedies Code, however, is applicable to the claim before us. Section 16.065 provides for acknowledgment of a claim by a debtor as follows:

An acknowledgment of the justness of a claim that appears to be barred by limitations is not admissible in evidence to defeat the law of limitations if made after the time that the claim is due unless the acknowledgment is in writing and is signed by the party to be charged.

TEX. CIV. PRAC. & REM.CODE ANN. § 16.065 (Vernon 1997).

We have reviewed the entire reporter's record and find there was ample evidence to support the court's judgment and the findings of fact are not against the great weight and preponderance of the evidence.

The trial court specifically found that Appellant made two payments on the $25,000 obligation during 1998 and that she continuously promised to pay the debt. The trial court also found that the promise to pay and acknowledgment of the debt was formalized by Appellant's Chapter 13 Bankruptcy filing. The bankruptcy filing lists the debt in the secured creditors schedule and is signed by the Appellant. While we do not reach the issue of whether the bankruptcy filing alone complies with Section 16.036, we agree with the trial court that the filing was a promise to pay, albeit in compliance with the limitations of the Bankruptcy Code, in writing and signed by the Appellant as required by Section 16.065. The bankruptcy case was dismissed on April 24, 2001 which triggered a new obligation to pay the debt.

We also consider the fact that the parties before the Court today are the original parties to the agreement. We recognize the significance of the fact that no third-party innocent purchaser of the property is involved. We do not know the factual reasons for Appellee's patience in the collection of this debt, but we agree with the trial court that there is ample evidence to support a finding that Appellant's conduct was an acknowledgment of the debt and a promise to pay that was revised and acknowledged several years after the original due date.

Appellant did not object to the Findings of Fact as filed nor inform the court of any claimed deficiencies or error. Further, Appellant did not file Requested Findings of Fact or Conclusions of Law. A party has an obligation to point out deficiencies in the filed findings of fact or conclusions of law or any complaints regarding same are waived. Because Appellant did not do so, and because there is ample evidence to

support the trial court's findings, we hold that Appellant's Issue No. One is overruled.

Turning to Appellant's Issue No. Two, we consider Appellant's argument that her claim of the homestead exemption bars Appellee's claim.

The Texas Constitution addresses the issue of homesteads and provides the following protection:

Sec. 50.   (a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

(1) the purchase money thereof, or a part of such purchase money;

(2) the taxes due thereon;

(3) an owelty of partition imposed against the entirety of the property by a court order or by a written agreement of the parties to the partition, including a debt of one spouse in favor of the other spouse resulting from a division or an award of a family homestead in a divorce proceeding;

(4) the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner;

(5) work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon if:

. . .

(6)  an extension of credit that:

(A) is secured by a voluntary lien on the homestead created under a written agreement with the consent of each owner and each owner's spouse;

. . .

(7) a reverse mortgage; or

(8) the conversion and refinance of a personal property lien secured by a manufactured home to a lien on real property, including the refinance of the purchase price of the manufactured home, the cost of installing the manufactured home on the real property, and the refinance of the purchase price of the real property.

. . .

(d) A purchaser or lender for value without actual knowledge may conclusively rely on an affidavit that designates other property as the homestead of the affiant and that states that the property to be conveyed or encumbered is not the homestead of the affiant.

TEX. CONST. art. XVI, § 50(a)(d).

■■■■■   The homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but the three types of constitutionally permitted liens against homesteads. *Sanchez v. Telles*, 960 S.W.2d 762, 769 (Tex. App.-El Paso 1997, writ denied); *Heggen v. Pemelton*, 836 S.W.2d 145, 148 (Tex. 1992). This interest, unlike the right of reimbursement, gives protective legal security rather than vested economic rights. *Sanchez*, 960 S.W.2d at 769; *Heggen*, 836 S.W.2d at 148.   In Texas, the homestead right constitutes an estate in land. *Sanchez*, 960 S.W.2d at 769; *Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125, 129 (Tex.1991).   This estate is analogous to a life tenancy, with the holder of the homestead right possessing the rights similar to those of a life tenant for so long as the property retains its homestead character. *Sanchez*, 960 S.W.2d at 769; *Laster*, 826 S.W.2d at 129, *citing Fiew v. Qualtrough*, 624 S.W.2d 335, 337 (Tex.App.-Corpus Christi 1981, writ ref'd n.r.e.); *Sparks v. Robertson*, 203 S.W.2d 622, 623 (Tex.Civ. App.-Austin 1947, writ ref'd).   Although the homestead estate is not identical to a

life estate because one's homestead rights can be lost through abandonment, "it may be said that the homestead laws have the effect of reducing the underlying ownership rights in a homestead property to something akin to remainder interests and vesting in each spouse an interest akin to an undivided life estate in the property." *Sanchez,* 960 S.W.2d at 769; *Laster,* 826 S.W.2d at 129, *citing United States v. Rodgers,* 461 U.S. 677, 686, 103 S.Ct. 2132, 2138, 76 L.Ed.2d 236 (1983).

The Texas Property Code also provides for the designation of a homestead as follows:

(c) Except as provided by Subsection (e) or Subchapter B, to designate property as a homestead, a person or persons, as applicable, must make the designation in an instrument that is signed and acknowledged or proved in the manner required for the recording of other instruments. The person or persons must file the designation with the county clerk of the county in which all or part of the property is located. The clerk shall record the designation in the county deed records. The designation must contain:

(1) a description sufficient to identify the property designated;

(2) a statement by the person or persons who executed the instrument that the property is designated as the homestead of the person's family or as the homestead of a single adult person not otherwise entitled to a homestead;

(3) the name of the current record title holder of the property; and

(4) for a rural homestead, the number of acres designated and, if there is more than one survey, the number of acres in each.

TEX. PROP.CODE ANN. § 41.005(c) (Vernon 2000).

Homestead rights have their origin in constitutional and statutory provisions and not in the common law. *Sanchez,* 960 S.W.2d at 769; *Gann v. Montgomery,* 210 S.W.2d 255, 257–58 (Tex.Civ. App.-Fort Worth 1948, writ ref'd n.r.e.), *citing* 40 C.J.S. HOMESTEADS § 2. There are no exemptions except those provided by law. *Sanchez,* 960 S.W.2d at 769; *Gann,* 210 S.W.2d at 258. The courts have always given a liberal construction to the constitution and statutes to protect the homestead rights. *Sanchez,* 960 S.W.2d at 769; *Gann,* 210 S.W.2d at 258. It is clear however, that the courts cannot protect that which is not homestead. *Sanchez,* 960 S.W.2d at 769; *Gann,* 210 S.W.2d at 258, *citing Whiteman v. Burkey,* 115 Tex. 400, 282 S.W. 788 (1926).

To establish homestead rights, the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead. *Sanchez,* 960 S.W.2d at 770 (citations omitted). The party claiming the homestead exemption has the burden of establishing the homestead character of the property. *Id.; NCNB Texas Nat'l Bank v. Carpenter,* 849 S.W.2d 875, 879 (Tex.App.-Fort Worth 1993, no writ). A subsequent purchaser of homestead property may assert the prior persons homestead protection against a prior lienholder so long as there is no gap between the time of homestead alienation and recordation of his title. *Sanchez,* 960 S.W.2d at 770; *Lawrence v. Lawrence,* 911 S.W.2d 450, 452–53 (Tex.App.-Texarkana 1995, writ denied). No estoppel can arise in favor of a lender or encumbrancer who has attempted to secure a lien on homestead property that is in actual use and possession of the homestead claimant, based solely upon declarations, whether written or oral, which state to the contrary. *Sanchez,* 960 S.W.2d at 770; *Car-*

penter, 849 S.W.2d at 880; *First Inter-state Bank of Bedford v. Bland*, 810 S.W.2d 277, 287 (Tex.App.-Fort Worth 1991, no writ). Moreover, when a homestead claimant is in actual occupancy of his homestead, it will be deemed that a lender or encumbrancer acted with knowledge of the occupant's right to invoke the rule of homestead. *Sanchez*, 960 S.W.2d at 770; *Carpenter*, 849 S.W.2d at 880. Possession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact. *Sanchez*, 960 S.W.2d at 770; *Carpenter*, 849 S.W.2d at 880. It must always be remembered that mere ownership alone is insufficient to constitute premises of a homestead, *Sanchez*, 960 S.W.2d at 770; *Silvers v. Welch*, 127 Tex. 58, 91 S.W.2d 686, 688 (1936); that merely residing in a house over a length of time alone does not convert it into a homestead, *Sanchez*, 960 S.W.2d at 770; *Hilliard v. Home Builders Supply Co.*, 399 S.W.2d 198, 201 (Tex.Civ. App.-Fort Worth 1966, writ ref'd n.r.e.); that occupancy of property does not ipso facto make the property a homestead, *Sanchez*, 960 S.W.2d at 770; *Purdin v. Jenkins*, 337 S.W.2d 418, 421 (Tex.Civ. App.-Dallas 1960, no writ); and that the word "home" is not necessarily synonymous with "homestead." *Sanchez*, 960 S.W.2d at 770; *West v. Austin Nat'l Bank*, 427 S.W.2d 906, 912 (Tex.Civ.App.-San Antonio 1968, writ ref'd n.r.e.).

■ It must also be noted that a court may not assume facts to support a claim of homestead against the validity of an existing debt or lien. *Sanchez*, 960 S.W.2d at 771; *Hilliard*, 399 S.W.2d at 200.

■ Turning to the evidence presented in the record, we find that the evidence is unequivocal. Appellant had not nor could she have claimed the property in question as her homestead at the time of the loan, the execution of the Deed of Trust on her behalf, or of the filing of the lien. The lien clearly predates the existence of any homestead claim, and as such, is valid and enforceable and cannot be defeated by the subsequent claim of homestead by Appellant. Further, the Deed of Trust contains two paragraphs of significance to our determination. In Article VI–Borrower's Representations, Warranties, Covenants, and Agreements, paragraph 6.02 provides:

TITLE TO PROPERTY AND LIENS OF THIS INSTRUMENT. Borrower has good and indefeasible title to the Land and the Improvements and good and marketable title to the Personal Property, free and clear of any liens, charges, encumbrances, security interests, and adverse claims whatsoever, except as otherwise provided herein. If the interest of Lender in the Property or any part thereof shall be endangered or shall be attacked, directly or indirectly, Borrower authorizes Lender, at Borrower's expense, to take all necessary and proper steps for the defense of such interest, including the employment of attorneys, the prosecution or defense of litigation, and the compromise or discharge of claims made against such interest.

Paragraph 6.25 provides the following representations:

NON–HOMESTEAD. Borrower warrants and represents to Lender that the Property is not the business or residential homestead of Borrower or any other person, Borrower has no present intent to occupy in the future or use or claim in the future the Property either as business or residential homestead.

As stated previously, the Deed of Trust was signed by Reydesel Dominguez and notarized, pursuant to the power of attorney granted to him by Appellant, and the document is binding on Appellant. It is clear the representations included are pre-

cisely the type of representations contemplated by our Constitution and as such could be relied upon by Appellee. We also observe that Appellant did not present any written evidence reflecting her formal designation of the property in question as her homestead. We overrule Appellant's Issue No. Two.

■ Appellant's Issue Nos. Three through Six complain of Appellee's conduct in connection with his letters sent in 2002 and his attempted foreclosure of the property. Appellant asserts the procedure followed by Appellee violated various statutes dealing with the collection of debts. We note that the trial court granted Appellant's request for a Temporary Restraining Order halting the September 3, 2002 foreclosure sale. A full trial on the merits of the case was held on January 9, 2004. We also note that Appellant did not request any findings of fact or conclusions of law on the issues complained of. Any possible error was mooted by the entry of the Temporary Restraining Order halting any collection efforts on the part of Appellee and the subsequent trial on the merits. We further hold that any error, if it existed, was waived by Appellant's failure to request findings of fact and conclusions of law. Accordingly, we overrule Appellant's Issue Nos. Three through Six.

Having overruled all of Appellant's issues on appeal, we affirm the judgment of the trial court in its entirety.

LARSEN, J., not participating.